IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANGEL RECTOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-878-NJR-RJD |
| | ) |
| ANITRA PARRISH STECKENRIDER, | ) |
| Individually and in her official capacity, | ) |
| and WEXFORD HEALTH SOURCES, | ) |
| INC., a Pennsylvania corporation, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Angel Rector ("Rector") claims that, while she was employed by Defendant Wexford Health Sources, Inc. ("Wexford") as a nurse practitioner at Pinckneyville Correctional Center, she suffered sexual harassment and was a victim of retaliation. Pending before the Court is a Motion for Summary Judgment filed by Defendant Wexford (Doc. 52) and a Motion for Summary Judgment filed by Defendant Anitra Parrish Steckenrider ("Steckenrider") (Doc. 53). After the motions were fully briefed, the Court heard oral argument on December 1, 2016. For the reasons set forth below, both motions for summary judgment are granted.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Rector has worked as a nurse practitioner at Pinckneyville Correctional Center ("Pinckneyville") from 2009 to the present (Doc. 52, p. 3; Doc. 59, p. 2). She is specifically

---

[1] An overview of the events and basis for Rector's claims are presented here, drawing on Defendants' motions, Rector's response briefs, and the summary judgment record. More detailed facts are presented and analyzed below in the Court's analysis of the evidence.

employed by Defendant Wexford, who contracts with the State of Illinois to provide comprehensive medical, dental, mental health, and pharmacy services to individuals remanded to the custody of the Illinois Department of Corrections ("IDOC") (Doc. 52, p. 2-3; Doc. 59, p. 1). Defendant Steckenrider was an employee of Wexford from January 2013 through January 2014, and served as the Director of Nursing within Pinckneyville, which was a managerial or supervisory position, but she was not Rector's direct supervisor (Doc. 52, p. 3; Doc. 52-1, p. 3). Dr. Vipin Shah ("Dr. Shah") is also an employee of Wexford, and he served as the Medical Director at Pinckneyville from July 2011 through January 2016 (Doc. 52, p. 4; Doc. 60-4, p. 3; Doc. 60-5, p. 6). As the Medical Director of Pinckneyville, Dr. Shah was Rector's direct supervisor (Doc. 52, p. 4; Doc. 60-5, p. 53). Terry McCann ("McCann") was the Wexford Regional Supervisor, and he oversaw the Wexford operation within Pinckneyville (Doc. 52, p. 4; Doc. 59, p. 2).

Rector claims that, during her time at Pinckneyville, Steckenrider made many inappropriate comments in the workplace on a frequent and daily basis (Doc. 69, p. 3; Doc. 60-5, p. 32). Rector's office was located next to Steckenrider's office, their offices sharing a wall, and Rector often overheard these inappropriate comments (Doc. 59, p. 3). The topics of these comments included Steckenrider's sexual experiences, physical appearance, and sexual desires (Doc. 60-5, pp. 32-38). These comments were made directly to Rector, made to other Wexford employees and overheard by Rector, or heard by Rector through other employees (*Id.*). Rector specifically alleges that Steckenrider made the following comment to her directly:

- Steckenrider, referencing an officer who worked at the prison, said that "I fuck him. I love him. His girlfriend, wife, ex-wife and lover all work here." (Doc. 60-5, pp. 32-33).

Specific comments made to others in the workplace and overheard by Rector include the following:

- Steckenrider commented to multiple employees that her "pussy lips were black" and she did not know why (Doc. 60-5, p. 36).

- Steckenrider commented to two other employees that "my boyfriend started throwing dildos, sex toys around the room and accused me of living big n***** dick." (Doc. 60-5, p. 35).

- Steckenrider made the following comments to other employees on various occasions: "I want to fuck him," "Oh, my God, he is so sexy," and "I love black men." (Doc. 60-5, p. 36).

- Steckenrider commented to another employee that "I got so drunk on a boat that I let some chick eat me out and then I let my cousin fuck me." (Doc. 60-5, p. 37).

Rector also heard from another employee, Christine Brown, that Steckenrider showed other employees a photograph of a man's penis, using a thumb to cover up "her parts" when they were at a country club after work for a personal gathering (Doc. 60-5, p. 24-25; Doc. 59, p. 5). Rector also heard from another employee, Amy Hughsman, that Steckenrider told Hughsman while they were at work that "she wanted to fuck [Huseman's] son." (Doc. 60-5, p. 18).

Rector also claims that an inappropriate comment was made by McCann. Specifically, Rector overheard McCann ask another employee, Melissa Sageser, "how did your surgery turn out?" (referencing her recent breast surgery) (Doc. 60-5, p. 19). Sageser responded "[a]s long as they stay right here, I will be 100 percent satisfied."

(Doc. 60-5, p. 20). Rector does not know what McCann said in response, as the two had walked behind a closed door (*Id.*).

Rector alleges that Steckenrider's sexual comments in the workplace were so offensive and occurred so often that it caused her to experience concentration issues at work (Doc. 59, p. 6; Doc. 60-5, p. 54). Often times, other nurses would approach Rector with complaints about Steckenrider's behavior (Doc. 59, p. 6; Doc. 60-5, pp. 54-55).

Between March 2013 and June 2013, Rector complained about Steckenrider's conduct to Christine Brown, the facility's Healthcare Unit Administrator, on five different occasions (Doc. 59, p. 6; Doc. 60-5, p. 24). Rector also reported Steckenrider's conduct to her direct supervisor, Dr. Shah, on a daily basis (Doc. 60-5, p. 29). Additionally, in June 2013, Rector reported Steckenrider's conduct to Assistant Warden Jody Goetting on two separate occasions, and to Terry McCann on two separate occasions (Doc. 60-5, p. 26, 28).

After reporting such conduct, Rector complains that the following things occurred: (1) her overtime hours diminished; (2) she experienced a two-month delay in receiving reimbursement for a DEA license fee; (3) she was advised that her schedule was planned to be changed; (4) Steckenrider began enforcing the tardy and call-in policy; (5) Steckenrider addressed the dress code policy in a meeting, after McCann witnessed Rector providing patient care in non-uniform dress; and (6) McCann held a meeting with Rector where he questioned Rector about alleged wrongdoing and accused her of being a "ring leader" and creating issues at work (Doc. 59, pp. 12-14).

In April 2013, Rector was able to relocate her office in order to avoid Steckenrider (Doc. 59, p. 6). In July 2013, Rector filed charges of discrimination against Wexford, Steckenrider, and McCann with the Illinois Department of Human Rights ("IDHR"), alleging that she had been subjected to sexual harassment, a hostile work environment, and experienced acts of retaliation for seeking relief from the harassing behavior (Doc. 52, p. 4; Doc. 52-3, p. 4; Doc. 60-5, p. 13; Doc. 59, p. 15). The IDHR conducted an investigation into the charges and concluded that there was a finding of sexual harassment (Doc. 59, p. 15; Doc. 59-3, p. 70).[2]

Rector filed her Complaint on August 11, 2014 (Doc. 2). The case was originally assigned to United States District Judge J. Phil Gilbert. On December 16, 2014, Judge Gilbert granted Steckenrider's and Wexford's Motions to Dismiss (Docs. 10 and 12). Rector subsequently filed an Amended Complaint, the operative complaint in this matter, which asserts the following five counts: Title VII claim for unlawful sexual harassment against Wexford (Count I); Illinois Human Rights Act claim for unlawful sexual harassment against Wexford (Count II); Illinois Human Rights Act claim for retaliation against Wexford (Count III); Illinois Human Rights Act claim for sexual harassment against Steckenrider (Count IV); and Illinois Human Rights Act claim for retaliation against Steckenrider (Count V) (Doc. 27).[3] On February 24, 2015, the undersigned accepted transfer of this case as related to *Flowers v. Steckenrider, et al.* (Case

---

[2] Rector does not point the Court to where the IDHR findings have been submitted into evidence, and it does not appear that they have been. Nonetheless, such findings are not dispositive on whether a civil rights violation occurred. *See, e.g., Newell v. Micro Center Sales Group*, No. 02-C-2104, 2003 WL 1860272, at *4 (N.D. Ill. Apr. 8, 2003) ("The investigator concluded from his investigation that there was substantial evidence of a violation but the Court does not have to accept what amount to his legal conclusions.").

[3] The Court has jurisdiction pursuant to 28 U.S.C. § 1331 as Rector's sexual harassment claims arise under Title VII of the Civil Rights Act. The Court has supplemental jurisdiction over her claims arising under the Illinois Human Rights Act pursuant to 28 U.S.C. § 1367.

No. 14-cv-877-NJR-RJD), as both cases, brought by different plaintiffs, asserted similar claims against Wexford and Steckenrider based on violations of Title VII and the Illinois Human Rights Act. *Flowers v. Steckenrider, et al.* (Case No. 14-cv-877-NJR-RJD) settled on March 6, 2017.

On October 21, 2016, Defendants Steckenrider and Wexford each filed summary judgment motions (Docs. 52 and 53). On November 21, 2016, Rector responded to both motions (Docs. 57-60). On November 29, 2016, Defendants filed a joint reply brief (Doc. 62). The Court held a hearing on the motions on December 1, 2016.

## LEGAL STANDARD

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence . . . ." *Reid v. Neighborhood Assistance Corp. of America*, 749 F.3d 581, 586 (7th Cir. 2014) (quoting *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005)).

## ANALYSIS

### I.    Sexual Harassment Under Title VII and the IHRA (Counts I, II, and IV)

Defendants argue that, even assuming Steckenrider and McCann made the alleged statements, Rector was not subjected to sexual harassment because the allegedly harassing conduct was not based on sex, and it was not severe or pervasive.

Title VII prohibits employers from discriminating against any individual because of the individual's sex. 42 U.S.C. § 2000e-2(a)(1). "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To avoid summary judgment on such a claim, a plaintiff must provide sufficient evidence to create a genuine issue of material fact as to four elements: "(1) [the plaintiff] was subjected to unwelcome harassment; (2) the harassment was based on her sex; (3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007). The framework used for Title VII claims has been adopted for claims under the IHRA. *See Polychroniou v. Frank,* No. 1-15-1177, 2015 WL 7429318, at *7 (Ill. App. Ct. Nov. 20, 2015) ("The prohibition of sexual harassment found in the Illinois Human Rights Act 'closely parallels' Title VII of the Civil Rights Act . . . and, therefore, examination of

federal Title VII law is appropriate."); *see also Frey v. Coleman*, 141 F. Supp. 3d 873, 879 (N.D. Ill. 2015) (stating that "[t]he requirements to make out a sexual harassment claim under the IHRA are substantially the same" as those under Title VII); *see also Jackson v. Dakkota Integrated Systems, LLC*, No. 14-cv-6384, 2016 WL 890754, at *3 (N.D. Ill. Mar. 9, 2016) ("A hostile work environment claim under the IHRA is analyzed under the same framework as a Title VII hostile work environment claim.").

"The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (internal citation and quotation marks omitted). "An inference of discrimination may be supported by various types of evidence, including evidence of implicit or explicit proposals of sexual activity by the harasser to the victim, evidence that the harasser is homosexual, evidence suggesting the harasser's general hostility to the presence of one gender in the workplace, or comparative evidence about the harasser's disparate treatment of members of both sexes." *Somers v. Express Scripts Holdings*, No. 1:15-cv-1424-JMS-DKL, 2016 WL 3541544, at *3 (S.D. Ind. June 29, 2016) (citing *Oncale*, 523 U.S at 80-81).

The third prong of the test, which requires the conduct to be severe or pervasive, has both an objective and a subjective component. *See Smith v. Farmstead*, No. 11-cv-9147, 2016 WL 5912886, at *3 (N.D. Ill. Oct. 11, 2016) (citing *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008)). "The plaintiff may satisfy the subjective prong by presenting evidence presenting evidence that he in fact perceived his workplace as hostile or abusive." *Id*.

The objective requirement, however, requires the court to look at the totality of the circumstances. *Id*. "Deciding whether a work environment is hostile requires consideration of factors like the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016) (citing *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014)).

The Seventh Circuit Court of Appeals has explained that the concept of sexual harassment "is not designed to purge the workplace of vulgarity. Drawing the line is not always easy. On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures…. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers." *Baskerville v. Culligan Intern. Co.*, 50 F.3d 428, 430 (7th Cir. 1995).

The Court does not find that Rector has sufficiently established that Steckenrider harassed her *because of her sex*. The Supreme Court in *Oncale* stressed that a plaintiff must prove that the conduct at issue was "not merely tinged with offensive sexual connotations," but actually constituted "discrimina[tion] . . . because of . . . sex." *Oncale*, 523 U.S. at 81. Of course, this requirement applies to opposite sex and same-sex claims of sexual harassment. *Id*. Although the Supreme Court in *Oncale* generously set forth various examples of conduct that might support an inference of discrimination on the basis of sex in the context of a same-sex harassment claim, unfortunately, none of those

examples are helpful here.

Here, Steckenrider, a woman, was making comments to other women about other men. The one comment that Steckenrider made directly to Rector did not include sexual connotations directed at Rector, it included a sexual connotation directed at a man. *See Oncale*, 523 U.S. at 80 (workplace harassment is not automatically discrimination "merely because the words used have sexual content or connotations.").[4] Steckenrider's comment did not express a sexual interest in Rector, she was expressing a sexual interest in a man (and indicating that she had an ongoing sexual relationship with him).

Steckenrider's comments also do not reflect a general hostility to the presence of women in the workplace. *See Yuknis v. First Student, Inc.*, 481 F.3d 552, 554 (7th Cir. 2007) ("The creation of a hostile work environment is actionable under Title VII only when the hostility is to a group . . . such as women."). The comments made by Steckenrider are not objectively degrading toward women in general.[5] Moreover, both sides agreed at the hearing that approximately ninety percent of the employees working in the healthcare unit at Pinckneyville Correctional Center are female (*See also* Doc. 60-5, p. 32; Doc. 62-1, p. 2). Thus, Rector has failed to create a reasonable inference that she was targeted because she was female. For these reasons, the Court finds that there is no evidence from which a jury could find that Rector was harassed *because of her sex*.

Additionally, the Court finds that the Steckenrider's comments were not sufficiently severe or pervasive. As mentioned above, Steckenrider only made one

---

[4] Rather than regurgitating Steckenrider's comments throughout this Order, the Court refers the reader back to page 3 of this Order.
[5] Perhaps some of these comments could be objectively viewed as self-degrading to Steckenrider or degrading to men (of course, many men might view that differently).

comment directly to Rector. Most of the comments Rector complains of were made to other employees and *overheard* by Rector. *See Smith*, 388 F.3d at 567 ("when harassment is 'directed at someone other than the plaintiff, the 'impact of [such] 'second-hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff.'"); *see also Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1035 (7th Cir. 2003) (when referring to two distasteful jokes made to other coworkers and overheard by the plaintiff, the Court of Appeals noted that "'second-hand harassment,' that is, comments not directed to the plaintiff, do not have the same impact as 'harassment directed at the plaintiff.'"). The incident at the country club where Steckenrider showed a photo of a man's penis to other employees occurred at a private social gathering, not in the workplace. *See, e.g. Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1366 (10th Cir. 1997) (finding certain remarks were not sufficiently severe or pervasive to create a hostile work environment, noting specifically that one of those remarks occurred at a private club and not in the workplace). Additionally, Rector was not present for this incident.

Steckenrider never made any sexual advances toward Rector, and there is no evidence that she ever used obscene language, gestures, or behavior directed toward Rector. In fact, Rector testified at her deposition that she never felt that Steckenrider expressed an interest in her sexually (Doc. 60-5, p. 32). The Supreme Court has stated that "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Oncale*,

523 U.S. at 78. While Steckenrider's comments are definitely uncouth and unprofessional and would undoubtedly be viewed as disrespectful to many, these comments cannot be found to have intimidated, ridiculed, or insulted Rector in the way that rises to the level of actionable sexual harassment. *See Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 537 (7th Cir. 1993) (holding that "[t]he conduct of [the plaintiff's] superior was inappropriate and unprofessional" but that "[n]onetheless, the record does not reasonably support an inference that the misconduct [the plaintiff] has described was so serious or pervasive that it created a hostile work environment"). In fact, Rector testified that she never felt intimidated or threatened by Steckenrider's comments (Doc. 60-5, p. 38).

Rector also alleges that she was subjected to a hostile work environment because she overheard McCann ask another employee, Melissa Sageser, "how did your surgery turn out?" (referring to her recent breast surgery) (Doc. 60-5, p. 19). Yet Rector testified at her deposition that she does not believe that she was personally sexually harassed by McCann (Doc. 60-5, p. 20). This single comment made by McCann directed at another employee is insufficient to establish a hostile work environment. As the Seventh Circuit Court of Appeals has stated, "[t]he American workplace would be a seething cauldron if workers could with impunity pepper their employer and eventually the EEOC and the courts with complaints of being offended by remarks and behaviors unrelated to the complainant except for his having overheard, or heard of, them." *Yuknis*, 481 F.3d at 556.

Rector argues that Title VII and the IHRA specifically diverge on how they define sexual harassment, and the IHRA definition is broader and does not require that the offending conduct be based on sex, as Title VII does. The IHRA defines sexual

harassment as follows:

> [A]ny unwelcome sexual advances or requests for sexual favors or **any conduct of a sexual nature** when . . . (3) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

775 ILCS 5/2-101(E) (emphasis added). As the Court noted above, Illinois courts have adopted the test established under Title VII in determining whether conduct creates a hostile work environment sufficient to sustain a finding of sexual harassment under the IHRA. *See, e.g., Cook Cty. Sheriff's Office v. Cook Cty. Com'n on Human Rights*, 53 N.E.3d 1144, 1153 (Ill. App. Ct. 2016). Nonetheless, even when looking closely at the IHRA's definition of sexual harassment, Rector has failed to establish that she was subjected to sexual harassment as defined by the IHRA. While the Court agrees with Rector's argument that the comments fall within the broad category of "any conduct of a sexual nature," such comments cannot be found to have *substantially* interfered with Rector's work performance. Rector testified at her deposition that, although her stress level was higher in 2013 as a result of the comments, she does not "think [her] performance level was lower" (Doc. 60-5, p. 37). Rector continued to work during this time and she still felt like she did a good job and was a good employee in 2013 (Doc. 60-5, p. 38). Additionally, for the reasons already stated, the comments cannot be found to have created an intimidating, hostile, or offensive work environment that rises to the level of actionable sexual harassment.

Accordingly, the Court grants summary judgment in favor of Defendants as to the Title VII and IHRA sexual harassment claims against Wexford and Steckenrider (Counts I, II, IV).

> II.     **IHRA Claims for Retaliation Against Wexford and Steckenrider (Counts III and V)**

Retaliation is a cognizable claim under the Illinois Human Rights Act. *See Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016). Specifically, retaliation against an employee who has opposed what she reasonably and in good faith believes to be unlawful sexual harassment, or who has filed a charge or complaint under the IHRA, is explicitly prohibited by the IHRA. *See* 775 Ill. Comp. Stat. Ann. 5/6-101(A). "Illinois courts apply the federal Title VII framework to IHRA claims" involving retaliation. *Volling,* 840 F.3d at 383. "To succeed on a Title VII retaliation claim, plaintiffs must "present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Id*.

In *Ortiz*, the Seventh Circuit Court of Appeals instructed district courts to "stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "Instead, the test 'is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *David v. Board of Trustees of Community College Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (citing *Ortiz*, 834 F.3d at 765).

Because *Ortiz* does not bar a plaintiff from proceeding under the *McDonnell Douglas* burden-shifting method, *see Ortiz*, 834 F.3d at 766, a plaintiff may attempt to meet her burden by showing that, in addition to engaging in a statutorily protected activity and suffering a materially adverse employment action, she was "meeting [her]

employer's legitimate expectations; and . . . [she] was treated less favorably than similarly-situated employees who did not engage in protected activity." *Boss*, 816 F.3d at 918; *see Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to present a legitimate, non-retaliatory reason for the adverse employment action. *See Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). Once the defendant presents a legitimate non-invidious reason, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual. *Silverman*, 637 F.3d at 742.

Rector argues that certain actions were taken against her, which were designed to retaliate against her and punish her, for raising concerns regarding Steckenrider's conduct as early as March and April 2013.[6] Rector asserts that she was retaliated against for raising concerns regarding Steckenrider's conduct on the following occasions: when she complained to Christine Brown five different times from March 2013 through June 2013 (Doc. 60-5, p. 24); when she complained to Dr. Shah on a daily basis (Doc. 60-5, p. 29); when she complained to the Assistant Warden two different times in June 2013 (Doc. 60-5, p. 26); when she complained to McCann two different times in June 2013 (Doc. 60-5, p. 28).

"[A] retaliation claim isn't doomed simply because the complained-of conduct was not in fact an unlawful employment practice; rather, the plaintiff must have 'a sincere and *reasonable* belief that [s]he is opposing an unlawful practice.'" *Lord v. High*

---

[6] In the Amended Complaint, Rector brings retaliation claims against Steckenrider and Wexford, alleging that she was retaliated against for reporting the conduct of Steckenrider <u>and McCann</u>. In the briefing, however, Rector does not argue or point the Court to any evidence in the record demonstrating specifically that she reported the conduct of McCann and was retaliated against for reporting his conduct. In fact, Rector testified in her deposition that "I don't think he personally retaliated against me on anything related directly to him, like as far as anything he did to me sexually." (Doc. 60-5, p. 20).

*Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). "[The reasonableness] determination requires us to ask whether the complained-of conduct entailed a motive that Title VII prohibits." *Id*.

In *Lord*, a male plaintiff was teased by other male co-workers through sexual connotations about his supposed interest in a female audio engineer, he was slapped and poked in the buttocks by another male co-worker on three separate occasions, and grabbed between the legs by this same male co-worker. The plaintiff alleged that he was terminated because he complained of this conduct. *Id*. at 559-60. The Seventh Circuit found that the plaintiff's retaliation claim failed because he did not engage in a protected activity when he complained of the behavior, as his belief "that he was complaining about sexual harassment, though perhaps sincere, was objectively unreasonable." *Id*. at 563.

Here, the Court has already determined that there is no evidence that Rector was sexually harassed by Steckenrider. Following the Seventh Circuit's reasoning in *Lord*, because there is no evidence suggesting that Steckenrider discriminated against Rector because of her sex or engaged in sexual harassment as defined by the IHRA in making the comments that she made, Rector's belief that she was complaining about sexual harassment is objectively unreasonable. *Id*. This is true regardless of whether Rector sincerely believed that she was being sexually harassed by Steckenrider. Thus, her retaliation claim fails "for lack of evidence that [she] engaged in protected activity." *Id.*; *see also Nair v. Nicholson*, 464 F.3d 766, 769 (7th Cir. 2006) ("the motive must be to retaliate for" protected activity); *see also Whitlow v. Bradley University*, Case No.

1:16-cv-01223-JBM-JEH, 2017 WL 522948, at *12 (C.D. Ill. Feb. 8, 2017) ("If a plaintiff opposed conduct that was not proscribed by Title VII, no matter how frequent or severe, then his sincere belief that he opposed an unlawful practice cannot be reasonable."); *see also Magyar v. Saint Joseph Regional Medical Center*, 544 F.3d 766, 771 (7th Cir. 2008) ("The objective reasonableness of the belief is not assessed by examining whether the conduct was persistent or severe enough to be unlawful, but merely whether it falls into the category of conduct prohibited by the statute.").

Because Rector has not engaged in protected conduct, the retaliation claims fail, and the Court need not consider whether she suffered an adverse action. The Court grants Defendants' motions for summary judgment relating to the retaliation claims against Wexford and Steckenrider (Counts III and V).

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment filed by Wexford (Doc. 52) and **GRANTS** the Motion for Summary Judgment filed by Steckenrider (Doc. 53). The claims in this action are **DISMISSED with prejudice**. The case is **CLOSED**, and judgment will be entered accordingly.

IT IS SO ORDERED.

DATED: April 19, 2017

s/ Nancy J. Rosenstengel_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**